UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| EDGE MATERIALS, LLC, | ) |
|       Plaintiff/Counter Defendant, | ) ) ) |
| v. | ) No. 2:23-cv-00160-JPH-MKK ) |
| STERLING CONCRETE EQUIPMENT, INC., | ) ) ) |
|       Defendant/Counter Claimant. | ) ) |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Edge Materials, LLC entered a contract to buy equipment from Sterling Concrete Equipment, Inc. so that Edge could start producing ready-mix concrete. After the delivery was delayed, Edge withheld partial payment and brought this action against Sterling alleging breach of contract. Sterling responded with counterclaims. Edge and Sterling have filed cross-motions for partial summary judgment on liability. Dkt. 51; dkt. 61. For the reasons below, Edge's motion for partial summary judgment is **GRANTED in part and DENIED in part**. Dkt. [51]. Sterling's cross-motion is **DENIED**. Dkt. [61].

**I.
Facts and Background**

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). For each motion, the Court views and recites

the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.*

Edge Materials, LLC was founded in 2021 as a business that produces ready-mix concrete to sell to customers. Dkt. 58-1 at 1–2. As it was becoming operational, Edge needed a "concrete batch plant system" by early 2022, before the concrete business ramped up in the spring. *Id.* So, on July 29, 2021, Edge President Dana Boyd met with Sterling CEO Ross Buckner to discuss ordering the equipment. Dkt. 53-1 at 14 (Buckner Dep. at 49).

At that meeting, Mr. Boyd and Mr. Buckner signed a "bid proposal" identifying the equipment and payment terms. *Id.* at 15 (Buckner Dep. at 50–51); dkt. 63-2 (bid proposal). The bid proposal did not include a "requested or required ship date." Dkt. 52-1 at 43 (Buckner Dep. at 196). It did include a provision about its interaction with subsequent purchase orders:

> Purchaser expressly agrees that this document overrides any conflicting terms in any purchase order form or other form which buyer may tender to Sterling Concrete Equipment, Inc. Sterling Concrete Equipment, Inc. objects to and shall not be bound by any provision of buyers purchase order, acknowledgement or any other terms and conditions.

Dkt. 63-2 at 12.

That night, Mr. Boyd sent Mr. Buckner a signed purchase order for the equipment. Dkt. 58-1 at 2; dkt. 52-11 (email and purchase order). The next day, Mr. Buckner signed the purchase order and returned it to Mr. Boyd. *Id.* at 3; *see* dkt. 52-1 at 22 (30(b)(6) Dep. at 174). The purchase order specified a

2

"Req. Delivery or Completion Date" of mid-March 2022.  Dkt. 52-11 at 3.  It also incorporated listed terms and conditions:

> Terms and Conditions printed on the second page of the Purchase Order are part of this order and supersede any prior agreement or understanding between Dealer and Purchaser.

*Id.* at 3.

The purchase order's terms and conditions required Sterling to "immediately give written notice" if it had "reason to believe that performance will not be completed by the date provided in the Order."  *Id.* at 5.  They also addressed the effect of other documents' terms:

> All terms and conditions contained in an acknowledgment, invoice or other document of [Sterling] which conflict with this Order shall be without force or effect notwithstanding [Edge's] act of acceptance of Goods or Work or a payment therefore.
>
> . . . .
>
> This Order shall constitute the entire agreement between the parties.

*Id.* at 4.

Because of a manufacturing vendor's COVID-related delays, Sterling did not deliver Edge's equipment until September 2022.  Dkt. 53-1 at 33 (Buckner Dep. at 147–49); dkt. 63-1 at 4.  Sterling did not give Edge written notice before mid-March 2022 that delivery was delayed.  Dkt. 58-1 at 3; *see* dkt. 53-1 at 26 (Buckner Dep. at 110–113).

Edge filed this case in Indiana state court alleging that Sterling breached the purchase order.  Dkt. 1-2 (operative complaint).  Sterling removed the case

to this Court, dkt. 1, and filed counterclaims alleging that Edge breached the bid proposal, dkt. 28 at 12–15.  Edge and Sterling filed cross-motions for partial summary judgment.  Dkts. 51; dkt. 61.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on cross-motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party." *Williams*, 832 F.3d at 648.

## III.
## Analysis

In their cross-motions for partial summary judgment, the parties dispute whether the initial bid proposal or the subsequent purchase order is the governing contract.  *See* dkt. 55 at 6–8; dkt. 62 at 1–2.  Because the bid proposal and purchase order contain conflicting choice of law provisions, the

4

parties also address which state's law applies to the breach-of-contract claims. Dkt. 62 at 7–8; dkt. 77 at 18–19.

### A. Choice of law

The bid proposal specifies that it is governed by Ohio law, dkt. 63-2 at 15, while the purchase order specifies that Indiana law applies, dkt. 52-7 at 4. While the parties dispute which state's law applies, they agree that Ohio and Indiana law are "substantively similar" with no material difference on the contract-interpretation principles at issue in this case. Dkt. 62 at 7–8; dkt. 77 at 18–19. Like the parties, the Court has identified no material conflict and therefore applies Indiana law. *Kentucky Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010) (If there is not "actually . . . a difference between the relevant laws" then "the forum should apply the forum law.").

Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### B. The controlling contract

Edge argues that the purchase order controls the parties' contractual obligations because it was signed after the bid proposal and expressly "supersede[s] any prior agreement or understanding." Dkt. 55-1 at 16–17. Sterling responds that the purchase order's "acknowledgement" that it

5

supersedes prior agreements is ambiguous, and that the bid proposal controls because it expressly rejected any terms contained in any future purchase order. Dkt. 62 at 8–9.

The purchase order identified the parties and included an "acknowledgement" that it supersedes "any prior agreement or understanding between Dealer and Purchaser":

| VENDOR: | SHIP TO: | INVOICE TO: |
|---|---|---|
| Sterling Concrete Equipment<br>PO Box 186<br>South Vienna, OHIO 45369<br>937-747-4300 | Edge Materials LLC<br>151 West Stardust Road<br>Cloverdale, IN 46120 | Dana Boyd<br>Email rdanaboyd@outlook.com |

\*   \*   \*

**THIS ACKNOWLEDGEMENT MUST BE SIGNED AND RETURNED IMMEDIATELY.**

Terms and Conditions printed on the second page of the Purchase Order are part of this order and supersede any prior agreement or understanding between Dealer and Purchaser.

Dkt. 52-11 at 3.

Sterling argues that the acknowledgement is ambiguous because the purchase order identifies Sterling as "Vendor" rather than "Dealer," and "Dealer" is never defined. Dkt. 62 at 9. That does not make "Dealer" ambiguous, however, because "Vendor" is not identified as the sole contractual term for Sterling, "Vendor" and "Dealer" are synonyms in this equipment-sales context, and no party to the contract other than Sterling could be the "Dealer." *See G&G Oil Co. v. Cont. W. Ins. Co.*, 165 N.E.3d 82, 87 (Ind. 2021) ("[A] term is not ambiguous by the mere fact that the parties differ as to its meaning. Nor is a term necessarily ambiguous if a particular party does not define the term."); *Vesuvius USA Corp. v. Am. Com. Lines LLC*, 910 F.3d 331, 334 (7th Cir. 2018)

6

("[U]nder Indiana law, we must construe the contract as a whole and consider all provisions of the contract, not just the individual words, phrases, or paragraphs."). The only reasonable meaning of "Dealer" is therefore Sterling, so the acknowledgment is unambiguous. *See Wohlt v. Wohlt*, 245 N.E.3d 611, 617 (Ind. 2024) ("[F]or an ambiguity to exist, the contract must be subject to more than one reasonable interpretation.").

The acknowledgement therefore binds Sterling; and the purchase order, with its terms and conditions, is a valid contract. *See I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1035 (Ind. Ct. App. 1998) (When a vendor signs a buyer's tendered purchase order, the parties "enter[] into a binding agreement according to the terms and conditions set forth in the order."). That's the case despite the bid proposal's statement that it "overrides any conflicting terms in any purchase order form . . . which buyer may tender to Sterling Concrete Equipment, Inc." Dkt. 63-2 at 12. Sterling itself cast aside that statement by signing the subsequent purchase order, entering a new binding contract with its own terms and conditions. *See I.C.C. Protective Coatings, Inc.*, 695 N.E.2d at 1036 ("By signing Staley's purchase order without objection, I.C.C. obligated itself to [it]."); *cf. Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep Ram*, 98 N.E.3d 73, 79–80 (Ind. Ct. App. 2018) (explaining that contracts can be modified by agreement despite limiting terms in the original contract).

Indeed, overriding the bid proposal is the express effect of the purchase order's acknowledgement that its terms and conditions "supersede any prior

7

agreement or understanding," with its integration clause providing that the purchase order "shall constitute the entire agreement between the parties." Dkt. 52-11 at 3, 5; *see Hilbert v. Conseco Servs., L.L.C.*, 836 N.E.2d 1001, 1011 (Ind. Ct. App. 2005) (explaining that the contract term "supersede" means supplanted, made void, or repealed); *Cons. Grain & Barge Co. v. Ind. Port Comm'n*, 107 F.4th 684, 691 (7th Cir. 2024). The purchase order's broad language superseding prior agreements therefore repealed the bid proposal. *See Hilbert*, 836 N.E.2d at 1011; *cf. Large v. Mobile Tool Intern., Inc.*, 724 F.3d 766 (7th Cir. 2013) (applying Idaho law).

In other words, because the purchase order is more recent and covers the same ground, the prior bid proposal did not survive being "merged" into the purchase order. *See Skaggs v. Merchants Retail Credit Ass'n*, 519 N.E.2d 202, 204 (Ind. Ct. App. 1988) ("It is an old rule in Indiana that where a contract embraces the entire substance of a former contract, with some variations, the first contract is merged in the second."); *Buschman v. ADS Corp.*, 782 N.E.2d 423, 429 (Ind. Ct. App. 2003). And since the contracts merged, the subsequent purchase order governs the parties' contractual obligations. *See Skaggs*, 519 N.E.2d at 204 (the second contract "is presumed to embody all prior negotiations and agreements"); *Goldman v. Fadell*, 844 F.2d 1297, 1300 (7th Cir. 1988) (same); *McDonough v. Kane*, 75 Ind. 181, 185 (1881) (holding that because the second contract "embraced the entire substance of the former contract, with some variations" the second contract "must . . . be regarded as the only contract").

8

The cases that Sterling cites do not show otherwise.  Under *Morris v. Trinkle*, a subsequent contract does not supersede a prior one if there is "nothing inconsistent in the two contracts" and "the parties did not intend the new contract to supersede the old, but intended it as supplementary thereto." 170 N.E. 101, 104–05 (Ind. Ct. App. 1930).  Here, as explained above, both agreements covered the same subject matter and the purchase order's express language shows that it superseded the bid proposal.

For similar reasons, *SSD Control Technology v. Breakthrough Technologies* does not uphold the bid proposal.  685 N.E.2d 1136, 1138 (Ind. Ct. App. 1997). There, the court held that a second contract "was not a novation[1] of the first" because there was no waiver of rights under the first contract.  *Id.*  But as later cases addressing *SSD Control Technology* show, it "holds at most that accrued claims for breach of a prior agreement are not extinguished by language in an agreement purporting to 'supersede all prior agreements.'" *Vara v. Menard, Inc.*, No. 1:05-cv-551-DFH-VSS, 2005 WL 2886075 at *9 (S.D. Ind. Oct. 28, 2005) (Hamilton, J.); *accord Hilbert*, 836 N.E.2d at 1011–12.  Sterling does not argue that a claim arose or accrued under the bid proposal in the hours before it signed Edge's purchase order, so *SSD Control Technology* does not apply.  *See* dkt. 62 at 13–14; dkt. 79 at 6–7; Ind. Code § 26-1-2-725(2) ("A cause of action [for breach of any contract for sale] accrues when the breach occurs.").

---

[1] "A novation is a new contract made with the intent to extinguish one already in existence." *Ashbaugh v. Horvath*, 859 N.E.2d 1260, 1265 (Ind. Ct. App. 2007).  Edge does not rely on novation in seeking partial summary judgment.  Dkt. 83 at 6.

9

**C. Edge's claims for breach of the purchase order**

Edge argues that it's entitled to summary judgment on liability for its claims that Sterling breached the purchase order by (1) failing to deliver the equipment by mid-March 2022, and (2) failing to timely provide written notice of the delivery delay. Dkt. 55-1 at 21–22. Sterling responds that Edge has waived these claims and that it did not breach the purchase order. Dkt. 62 at 10–12, 14–15.

For its waiver argument, Sterling contends that "the only remedy specifically enumerated" in the purchase order for the alleged breaches "is cancellation of the contract," so Edge had to request cancellation to avoid waiving its claims for other relief. Dkt. 79 at 9–10. The purchase order, however, says that the remedy of cancellation is "cumulative and non-exclusive and shall be in addition to other rights and remedies provided by law." Dkt. 52-11 at 5. Under that language, a failure to request cancellation does not waive Edge's breach claims.[2]

For its failure-to-deliver claim, Edge relies on the purchase order's language setting the "Req. Delivery or Completion Date" as mid-March 2022. Dkt. 52-11 at 3. Because "Req." could reasonably mean either "requested" or "required," the purchase order is ambiguous about whether Sterling was "required" to deliver the equipment by mid-March 2022. *See* dkt. 62 at 10–11; *Wohlt*, 245 N.E.3d at 617. While the purchase order also said that "[t]ime is of

---

[2] Sterling also admits that there is a factual dispute about whether Edge requested cancellation, but, under the purchase order's language, that dispute is not material to this issue. *See* dkt. 79 at 9.

10

the essence," that too is consistent with either possible meaning.  *See* dkt. 52-11 at 5 ¶ 5.  For example, it could mean that Edge wanted to communicate to Sterling in writing the importance of having the equipment as soon as possible—perhaps even earlier than "mid-March 2022"—regardless of whether mid-March was "requested" or "required."  The meaning of "Req." therefore "requires extrinsic evidence" and "its construction is a matter for the fact-finder."  *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010).  So neither party is entitled to summary judgment on liability for this claim.

For its failure-to-notify claim, Edge relies on the purchase order's language that if Sterling "has reason to believe that performance will not be completed by the date provided . . . [it] shall immediately give written notice setting forth the cause and extent of [the] anticipated delay."  Dkt. 52-11 at 5.  Sterling admits that it notified Edge of the delay in April 2022—after the purchase order's "date provided."  Dkt. 62 at 12.  But it contends that Edge is not entitled to summary judgment because it provided notification once it knew the cause and extent of the delay.  *See id.*  Sterling provides no legal support for this argument, *see* dkt. 62 at 12, and it knew by the purchase order's mid-March 2022 date[3] that there would be a delay.  Yet Sterling waited to notify Edge.  Since the only contractual trigger for written notice was that Sterling "ha[d] reason to believe that performance will not be completed by the date

---

[3] Sterling also argues that it did not violate the notice provision since the purchase order lacked "any specific delivery or completion requirement."  Dkt. 79 at 9.  But the notice requirement is based simply on the mid-March 2022 "date provided" in the purchase order, so that date triggers the notice requirement regardless of whether the date was a requirement or request.

11

provided," Sterling breached the contract by not providing written notice "immediately." Dkt. 52-11 at 5. Edge is therefore entitled to summary judgment on liability for this claim.

### D. Sterling's counterclaims

Sterling has filed counterclaims alleging that Edge failed to make some required payments under the bid proposal and seeking repossession of the concrete equipment for failure to pay. Dkt. 28 at 12–15. Both parties seek summary judgment on the counterclaims. Edge argues that it's entitled to summary judgment because the counterclaims rely solely on the bid proposal, which was superseded by the purchase order. Dkt. 55-1 at 20. Sterling responds that it is entitled to summary judgment because both the bid proposal and purchase order required Edge to pay for the equipment, which Edge has not done "regardless of [which] is controlling." Dkt. 62 at 15–16.

While the bid proposal is superseded, it and the purchase order governed the same subject matter and merge, so Sterling may maintain its counterclaims for non-payment under the purchase order. *See Skaggs*, 519 N.E.2d at 204; *Schmees v. hc1.com*, 77 F.4th 483, 488–90 (7th Cir. 2023) (explaining that parties generally may not raise new claims at summary judgment but may rely on "a new legal theory"). However, as explained above, there are triable issues of fact on Sterling's alleged breaches of the purchase order. Edge's liability for withholding payment therefore cannot be determined before Sterling's liability. *See Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 917 (Ind. Ct. App. 2011) ("When one party to a contract commits the first

12

material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date."). So neither party is entitled to summary judgment on liability for Sterling's counterclaims.

## IV. Conclusion

Edge's motion for partial summary judgment is **GRANTED in part and DENIED in part**. Dkt. [51]. The purchase order is the controlling contract, and Edge is entitled to summary judgment on liability for its failure-to-notify claim. Sterling's cross-motion is **DENIED**. Dkt. [61].

Magistrate Judge Klump is asked to hold a status conference to discuss settlement and trial readiness.

**SO ORDERED.**

Date: 9/30/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel